| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>1437 Bannock Street, Room 256 (Clerk's Office)<br>Denver CO 80202<br>720-865-8614 | DATE FILED: June 7, 2018 2:53 PM<br>FILING ID: 2C35EE5E54D5E<br>CASE NUMBER: 2018CV32136 |
| Plaintiffs:<br>DAVID PALMER and LEANNA PALMER<br><br>v.<br><br>Defendant:<br>OWNERS INSURANCE COMPANY, an Ohio<br>Company | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiffs:<br>Brian Hugen, Esq., #40688<br>Ramos Law<br>3000 Youngfield St., Ste. 200<br>Wheat Ridge, CO 80215<br>Phone: (303) 733-6353<br>Fax: (303) 865-5666<br>E-mail: BrianH@ramoslaw.com | Case No.:   2018CV32136<br><br>Division:   414<br><br>Courtroom: |

## COMPLAINT FOR DAMAGES AND JURY DEMAND

David Palmer and Leanna Palmer, by and through her their legal counsel, Ramos Law, file their Complaint against the Defendant Owners Insurance Company as follows:

### PARTIES

1.     Plaintiff David Palmer resides at 5149 LeDuc Lane, Castle Rock, CO 80108 for all relevant times.

2.     Plaintiff Leanna Palmer resides at 5149 LeDuc Lane, Castle Rock, CO 80108 for all relevant times.

3.     Defendant Owners Insurance Company ("Owners") is an Ohio corporation and its principal place of business and corporate office is located at 6101 Anacapri Blvd., Lansing, MI 48917 for all relevant times.

4.     For all relevant times, Owners is authorized to do business and is doing business in the State of Colorado. The registered agent for Owners is the Colorado

Division of Insurance, 1560 Broadway, Denver, CO 80202.

     5.    Venue is proper in this Court pursuant to C.R.C.P. 98(c)(1) because the Defendant is a nonresident of this state and it may be tried in any county designated in the Complaint.

## GENERAL ALLEGATIONS

     6.    Plaintiffs incorporate all previous allegations as if more fully set forth herein.

     7.    For all relevant times, David Palmer ("Mr. Palmer") and Leanna Palmer ("Mrs. Palmer") are married.

     8.    On or about June 9, 2015, at approximately 11:45 a.m., Mr. Palmer was driving his 2013 BMW 328i westbound on Arapahoe Rd. approaching the intersection with Yosemite Rd. in Centennial, Colorado and stopped for traffic in front of him due to a red light. Pamela Berlin ("Ms. Berlin"), while driving her vehicle behind Mr. Palmer, collided with the rear of Mr. Palmer's vehicle. This incident will be referred to as "the collision".

     9.    At the time of the collision, Mr. Palmer was wearing his seatbelt.

     10.    Mr. Palmer did not have an opportunity to take evasive action to avoid the collision.

     11.    Mr. Palmer's acts or omissions in no way contributed to the cause of the accident.

     12.    As a result of the collision, Mr. Palmer sustained personal injuries and incurred damages.

     13.    Weather conditions were not a factor in causing or contributing to the collision.

     14.    As a direct and proximate result of the collision, Mr. Palmer sustained neck and back injuries.

     15.    Prior to the collision, Mr. Palmer suffered with neck and back pain but his pain levels were much lower than his pain levels he experienced after the collision.

     16.    Prior to the collision, Mr. Palmer could perform full activities of daily living but after the collision, his ability to perform activities of daily living were significantly impaired.

     17.    Prior to the collision, Mr. Palmer received "maintenance" care from his chiropractor Dr. Watts.

2

18.     The collision caused Mr. Palmer's to experience significant increases in pain and substantial reductions of his ability to perform many functions of daily living.

19.     As a result of the injuries he sustained in the collision, Mr. Palmer required a cervical fusion surgery, care with physician spine specialists, imaging studies, pain intervention procedures such as cervical facet injections and cervical radiofrequency ablations, further chiropractic care and other treatment.

20.     As a result of the injuries he sustained in the collision, Mr. Palmer incurred over $195,000 in medical treatment bills.

21.     As a result of the injuries he sustained in the collision, Mr. Palmer had to retire early from his career and incurred approximately $750,000 in past and future income loss damages.

22.     Owners has been timely provided with all of Mr. Palmer's medical records and bills to evaluate the claim.

23.     At the time of the collision, Mr. and Mrs. Palmer were insured through a personal automobile policy issued by Owners (Policy No. 46-101-119-02) with effective dates of September 1, 2014 through September 1, 2015. This policy will be described as the "UIM policy". The UIM policy provided uninsured/underinsured motorist limits of $500,000 per person/$500,000 per occurrence to Mr. Palmer for any compensatory damages he sustained from the collision in addition to the $50,000 in bodily injury liability coverage of Ms. Berlin. The UIM policy also covers loss of consortium damages and any other damages allowed by law for which Mrs. Palmer sustained as a result of Mr. Palmer's injuries from the collision.

24.     Under the terms of Mr. and Mrs. Palmers Owners' insurance policy, the Palmers had a duty to cooperate with Owners during their investigation of their claim.

25.     Mr. and Mrs. Palmer have fully cooperated with Owners in their investigation of their UIM claims and have offered to provide them with anything and everything they requested in their evaluation of their UIM claims.

26.     Progressive Direct Insurance Company ("Progressive") is the automobile insurance company providing liability coverage to its insured Ms. Berlin for the collision.

27.     Ms. Berlin's per person bodily injury liability limits with Progressive at the time of the collision were $50,000.

28.     On November 4, 2016, Progressive offered to settle Mr. Palmer's claims against Ms. Berlin for the policy limits of $50,000.

29.     On November 4, 2016, the Palmers requested that Owners consent to the settlement with Progressive and release of all claims with Ms. Berlin.

3

30.    In a December 7, 2016 letter, Owners stated that it did not consent to Mr. Palmer settling his bodily injury claim against Ms. Berlin and that it desired to preserve its right of recovery against Ms. Berlin and therefore agreed to substitute its own payment of $50,000 in place of the offer from Progressive.

31.    On December 23, 2016, Owners Insurance sent an email to Mr. Palmer's attorney, Brian Hugen, ("Mr. Hugen") requesting that Mr. Palmer sign an Assignment of his rights, claims, demands and actions against Pamela Berlin to Owners and further stated, "We will then be able to pursue the tortfeasor for recovery without involving Mr. Palmer."

32.    The Assignment requested by Owners was sought because Owners claimed that Mr. Palmer had a duty to cooperate with Owners, it had a right to recover the substituted payment of $50,000 and had a right to recover any further amounts which may be paid or determined owing on Mr. Palmer's claim for UIM benefits pursuant Mr. Palmer's insurance policy with Owners.

33.    On January 3, 2017, David Palmer signed an Assignment of his rights, claims, demands and actions against Pamela Berlin to Owners.

34.    On January 10, 2017, Owners issued a check for $50,000 to David Palmer for the substituted payment in place of the $50,000 policy limits offer of Progressive.

35.    On February 27, 2017, Owners wrote Mr. Hugen requesting: the total dollar figure of the billings Mr. Palmer is claiming to date relating to his injury from the motor vehicle collision; an update of Mr. Palmer's symptoms, diagnoses and treatment; what has resolved; and, what the projected future prognosis is for Mr. Palmer.

36.    On March 1, 2017, Owners was informed that Mr. Palmer was scheduled for a triple spinal fusion.

37.    On June 14, 2017, Mr. Hugen sent Owners all medical records and bills received to date for Mr. Palmer, which included Mr. Palmer's cervical spinal fusion surgery performed by John Barker, M.D., which occurred on March 23, 2017.

38.    On June 14, 2017, Mr. Hugen provided Owners a description of Mr. Palmer's past earnings, evidence of his earnings, emails regarding his retirement effective December 31, 2015, and a description of why his injuries from the collision caused him to retire prematurely.

39.    On September 29, 2017, Gregory R. Giometti, Esq. ("Mr. Giometti") sent Mr. Hugen a letter stating that his firm had been retained by Owners and Owners wished to further investigate Mr. Palmer's claim for UIM benefits, including that it wished to retain a forensic orthopedic surgeon, a diagnostic radiologist and an accident reconstructionist specializing in biomechanics and injury causation, and once Owners received these reports, it will be in a better position to evaluate the potential settlement of

4

Mr. Palmer's UIM claim.

40. On November 10, 2017, Owners received updated records from Dr. Barker and Rocky Mountain Spine.

41. On November 28, 2017, Mr. Hugen sent Mr. Giometti a letter informing Owners that Mr. Palmer was making a claim for UIM benefits, he was still receiving medical treatment for his injuries from the collision and he had not yet reached maximum medical improvement.

42. On January 12, 2018, Mr. Giometti sent Mr. Hugen a letter stating that Owners Insurance had completed an investigation sufficient to respond to Mr. Palmer's request for UIM benefits. In this letter, Mr. Giometti stated that Owners Insurance had Marjorie Eskay-Auerbach, MD, JD perform a medical record review and attached Dr. Esky-Auerbach's November 15, 2017 report. In her report, Dr. Esky-Auerbach stated that Mr. Palmer's March 23, 2017 cervical discectomy and fusion surgery, and his cervical intervention pain procedures such as facet injections and a radiofrequency ablation were not caused by any injuries from the collision. Dr. Esky-Auerbach based her opinions, in part, that she could not accept Mr. and Mrs. Palmer's accounts of increase in Mr. Palmer's cervical pain and his decrease in his ability to perform activities of daily living because Dr. Esky-Auerbach believed that these descriptions by the Palmers were not reliable.

43. On January 19, 2018, Mr. Hugen wrote Mr. Giometti and pointed out that Owners had not spoken with Mr. and Mrs. Palmer, had not spoken to Mr. Palmer's supervisor at his employment and did not speak with Mr. Palmer's treating health care providers or seek further information from these health care providers. In this letter, Owners was asked to properly evaluate Mr. Palmer's pain levels and functioning levels before and after the collision and determine what treatment was necessary to return Mr. Palmer to his baseline of symptoms and functioning prior to the collision. Mr. Hugen requested that an Owners representative speak with Mr. Palmer's treating doctors to confirm that the collision was the cause of the pain intervention procedures and cervical discectomy and fusion surgery and speak with Mr. Palmer's employment supervisor. A request was also extended to contact Mr. Hugen to set up these meetings. Mr. Hugen also asked why Owners hired Dr. Eskay-Auerbach and why it relied only upon her opinions and rejected the opinions of Mr. Palmer's doctors. Mr. Hugen pointed out that Dr. Eskay-Auerbach was not licensed to practice medicine in Colorado, she was a known "defense doctor" and she was a professional expert witness who routinely disagreed with patients' treating doctors. Mr. Hugen requested that, rather than Owners rely exclusively upon a well-known defense doctor who had clear defense biases, the Palmers and Owners agree to a mutually acceptable spine physician, licensed in Colorado, to review all of the evidence and provide an opinion on causation of injuries and treatment.

44. On February 2, 2018, Mr. Giometti wrote Mr. Hugen and stated that Owners would like to obtain further information from Mr. Palmer's health care providers and requested a signed medical authorization from Mr. Palmer to do so. Mr. Giometti stated, however, that at that time, Owners did not believe it necessary to speak with Mr.

Palmer's health care providers, Mr. or Mrs. Palmer or Mr. Palmer's employment supervisor. Mr. Giometti also declined the Palmers' offer to have a mutually agreeable physician evaluate Mr. Palmer's case.

45.     On February 14, 2018, the medical authorizations signed by Mr. Palmer requested by Owners were sent to Mr. Giometti and he was provided the information Owners requested on Mr. Palmer's medical providers who treated him for five years prior to the collision,

46.     On March 13, 2018, signed statements by David Palmer and Leanna Palmer were sent to Mr. Giometti. These statements provided Owners information on Mr. Palmer's pain and functioning before the collision and how his pain and functioning changed after the collision.

47.     In an April 23, 2018 letter, Mr. Giometti informed Mr. Hugen that Owners had filed a Complaint against Ms. Berlin and attached a copy of the Complaint referenced as Owners Insurance Company v. Pamela Berlin, Arapahoe County District Court, Case Number 2018CV30922, Division 21. Mr. Giometti stated in this same letter that it is Owners' position that the Palmers may be bound by a judgment that arises from Owners lawsuit against Mr. Berlin and that a judgment will ultimately impact Mr. Palmer's UIM claim.

48.     On April 25, 2018, Mr. Hugen sent Mr. Giometti a letter requesting that Owners Insurance tender its UIM limits of $500,000 to Mr. Palmer and a breakdown of Mr. Palmer's income loss damages was provided.

49.     In a May 9, 2018 letter, Mr. Giometti stated that Owners believed that only $5,426 in medical bills were related to the collision and Mr. Palmer's total damages from the collision did not exceed Ms. Berlin's policy limits of $50,000. Based upon this claim, Owners denied payment of any UIM benefits to the Palmers.

50.     On May 25, 2018, Mr. Hugen sent Mr. Giometti a letter asking why Owners in its lawsuit against Ms. Berlin filed a CV Cover Sheet stating that a monetary judgment over $100,000 was not being sought and C.R.C.P. 16.1 applied when Owners had previously requested an assignment of all of Mr. Palmer's rights against Ms. Berlin so that it could recover not only the $50,000 in substituted payment but also up to $500,000 in UIM benefits which may be paid on the Palmers' UIM claim. Another offer was extended in this letter for setting up meetings with an Owners' representative and the Palmers and Mr. Palmer's treating surgeons.

51.     On May 30, 2018, Mr. Giometti sent a letter to Mr. Hugen stating that Owners filed the action under C.R.C.P. 16.1 because it did not believe that the value of Mr. Palmer's claims exceeded $100,000. Mr. Giometti added that rather than set up meetings with Mr. Palmer's health care providers and with Mr. Palmer, written discovery and depositions would be utilized. Mr. Giometti further stated that Ms. Berlin's insurer, Progressive Insurance, had offered its $50,000 policy limit to Owners but Owners declined to accept this offer. Lastly, Mr. Giometti enclosed a May 17, 2018 report of

6

Charles Bain, MD, CCFP.

52. In his May 17, 2018 report, Dr. Bain claimed that visible damage to Mr. Palmer's vehicle was not caused by the collision and none of his treatments to his cervical facets or his fusion surgery were caused by the collision.

53. In a June 1, 2018 letter, Mr. Hugen wrote Mr. Giometti and asked if it was Owners position that the findings of causation and damages in Owners Insurance v. Berlin would be binding on Mr. Palmers UIM claim pursuant to the law on issue preclusion.

54. In a June 4, 2018 letter, Mr. Giometti informed Mr. Hugen that it was Owners' position that a judgment in Owners Insurance v. Berlin would be binding in relation to Mr. Palmer's UIM claim.

55. In a June 5, 2018 letter, Mr. Hugen informed Mr. Giometti that Mr. Hugen would seek to intervene in Owners Insurance v. Berlin and request that the court address early in the process that the law on issue preclusion would not apply to the Palmers' UIM claims or in the alternative, enter an Order to stay the action until the claims brought by the Palmers against Owners were resolved by settlement or judgment.

56. In a June 6, 2018 letter to Mr. Giometti, Mr. Hugen asked why Owners on December 7, 2016 did not allow Mr. Palmer to settle for Ms. Berlin's policy limits of $50,000 and why it wished to preserve its right to pursue Ms. Berlin on all potential UIM payments.

57. On June 6, 2018, Mr. Giometti wrote a letter to Mr. Hugen stating that Owners would agree that: the Palmers would not be bound by whatever result was obtained in Owners v. Berlin; there was no need for the Palmers' counsel to intervene in the action; the Palmers could bring their claims against Owners in a separate action; and Owners would agree to extend the date upon which the Palmers may commence an action for UIM benefits against Owners until July 9, 2018.

58. At all relevant times Mr. Giometti and any other attorney at Giometti & Mereness, PC and any other attorney at Mr. Giometti's former's firm, Gregory R. Giometti & Associates, PC, involved in the Palmers' UIM claims, were agents for Owners and any actions by these attorneys are binding on Owners as if employees of Owners had performed these actions.

59. On May 9, 2018, Owners began to unreasonably deny and delay proper payment on the Palmers' UIM claims and Owners continued to unreasonably deny and delay proper payment on the Palmers' UIM claims.

60. On or before November 15, 2017, when Owners decided to retain Marjorie Eskay-Auerbach, MD, JD, Owners began to act in bad faith and began to act unfairly in its dealings with the Palmers on their UIM claims and Owners has continued to act in bad faith and unfairly in its dealings with the Palmers.

61.     On May 9, 2018, Owners breached its contract with the Palmers to pay reasonable UIM benefits to the Palmers.

62.     Mr. Palmer seeks from Owners his UIM contractual benefits to cover his past and future damages, including but not limited to, his past and future medical expenses, past and future income losses, past and future mileage, past and future pain and suffering, past and future physical impairment, disfigurement and prejudgment interest caused by the underinsured driver in the June 9, 2015 motor vehicle collision.

63.     Mrs. Palmer seeks from Owners her UIM contractual benefits to cover her loss of consortium damages and any other damages allowed by law for which Mrs. Palmer sustained due to Mr. Palmer's injuries from the collision.

## PLAINTIFFS' FIRST CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

64.     Plaintiffs incorporate all previous allegations as if more fully set forth herein.

65.     At all times relevant to this action, Mr. and Mrs. Palmer were insureds under the policy issued by the Owners and they had a contractual right to UIM benefits as a result of the June 9, 2015 motor vehicle collision.

66.     Mr. and Mrs. Palmer have complied with all conditions precedent to coverage under the insurance policy issued by Owners to them.

67.     To the extent that Mr. or Mrs. Palmer have failed to comply with any of the contractual obligations, Owners has not been prejudiced by the failure to comply.

68.     To the extent that Mr. or Mrs. Palmer have failed to comply with any of the contractual obligations, Owners may not rely on this failure to comply because it breached one or more material obligations under the policy prior to any alleged failure of Mr. or Mrs. Palmer to comply.

69.     At all times relevant to this action, Owners owed to Mr. and Mrs. Palmer a duty to pay reasonable UIM benefits owing under the insurance contract.

70.     Owners breached its contract by failing to pay Mr. and Mrs. Palmer reasonable underinsured motorist benefits and by failing to pay the full underinsured motorist benefits owing under the policy.

71.     As a direct and proximate result of Owners' breach of contract, Mr. and Mrs. Palmer have incurred damages. Mr. Palmer seeks from Owners his UIM contractual benefits to cover his past and future damages, including but not limited to, his past and future medical expenses, past and future income losses, past and future mileage expenses, past and future pain and suffering, past and future physical impairment and disfigurement

8

61. On May 9, 2018, Owners breached its contract with the Palmers to pay reasonable UIM benefits to the Palmers.

62. Mr. Palmer seeks from Owners his UIM contractual benefits to cover his past and future damages, including but not limited to, his past and future medical expenses, past and future income losses, past and future mileage, past and future pain and suffering, past and future physical impairment, disfigurement and prejudgment interest caused by the underinsured driver in the June 9, 2015 motor vehicle collision.

63. Mrs. Palmer seeks from Owners her UIM contractual benefits to cover her loss of consortium damages and any other damages allowed by law for which Mrs. Palmer sustained due to Mr. Palmer's injuries from the collision.

## PLAINTIFFS' FIRST CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

64. Plaintiffs incorporate all previous allegations as if more fully set forth herein.

65. At all times relevant to this action, Mr. and Mrs. Palmer were insureds under the policy issued by the Owners and they had a contractual right to UIM benefits as a result of the June 9, 2015 motor vehicle collision.

66. Mr. and Mrs. Palmer have complied with all conditions precedent to coverage under the insurance policy issued by Owners to them.

67. To the extent that Mr. or Mrs. Palmer have failed to comply with any of the contractual obligations, Owners has not been prejudiced by the failure to comply.

68. To the extent that Mr. or Mrs. Palmer have failed to comply with any of the contractual obligations, Owners may not rely on this failure to comply because it breached one or more material obligations under the policy prior to any alleged failure of Mr. or Mrs. Palmer to comply.

69. At all times relevant to this action, Owners owed to Mr. and Mrs. Palmer a duty to pay reasonable UIM benefits owing under the insurance contract.

70. Owners breached its contract by failing to pay Mr. and Mrs. Palmer reasonable underinsured motorist benefits and by failing to pay the full underinsured motorist benefits owing under the policy.

71. As a direct and proximate result of Owners' breach of contract, Mr. and Mrs. Palmer have incurred damages. Mr. Palmer seeks from Owners his UIM contractual benefits to cover his past and future damages, including but not limited to, his past and future medical expenses, past and future income losses, past and future mileage expenses, past and future pain and suffering, past and future physical impairment and disfigurement

8

caused by the underinsured driver in the June 9, 2015 motor vehicle collision, plus pre and post judgment interest, attorney's fees and costs. Mrs. Palmer seeks from Owners her UIM contractual benefits to cover her loss of consortium damages and any other damages allowed by law for which Mrs. Palmer sustained due to Mr. Palmer's injuries from the collision, plus pre and post judgment interest, attorney's fees and costs.

## PLAINTIFFS SECOND CLAIM FOR RELIEF
## (BAD FAITH BREACH OF AN INSURANCE CONTRACT)

72.     Plaintiffs incorporate all previous allegations as if more fully set forth herein.

73.     As a provider of insurance services to the public, Owners, at all times, had a duty to be actuated by good faith and fair dealing in everything pertaining thereto, abstain from deceptive or misleading practices and keep, observe, and practice the principles of law and equity in all matters pertaining to the business of insurance.

74.     Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith and fair dealing with their insured.  Pursuant to its implied duty of good faith and fair dealing, Owners owed to Mr. and Mrs. Palmer an obligation to treat Mr. and Mrs. Palmer's interest with equal consideration to their own interest.

75.     Owners has breached its duty of good faith and fair dealing owed to Mr. and Mrs. Palmer, including but not limited to:

a.     Failing to give equal consideration to the interests of the Palmers, its insureds;

b.     When investigating the Palmers' claims, failing to diligently search for evidence that supported Mr. and Mrs. Palmer's claims;

c.     Seeking to discover only evidence that defeated or minimized the Palmers' claims;

d.     Unreasonably delaying and/or withholding benefits under the insurance policy without a reasonable basis for delaying and/or withholding benefits, with knowledge or reckless disregard, or with a lack of reasonable basis for delaying and/or withholding benefits;

e.     Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy;

f.     Refusing to pay claims without conducting a reasonable investigation based upon all available information;

9

g.  Not attempting in good faith to effectuate prompt, fair and equitable settlement of Mr. and Mrs. Palmer's claims after its liability has become reasonably clear;

h.  Compelling Mr. and Mrs. Palmer to institute litigation to recover amounts due under the insurance policy by offering substantially less than the amount Mr. and Mrs. Palmer are entitled to recover;

i.  Forcing Mr. and Mrs. Palmer into the costly and lengthy process of litigation;

j.  Refusing to provide Mr. and Mrs. Palmer with a full and proper explanation of the basis of any offer to resolve the claim despite requests for an explanation of how they came up with their evaluation;

k.  Manipulating the legal process through a substituted payment, an assignment of rights, litigation against Ms. Berlin, maintaining that Mr. and Mrs. Palmer were bound by the judgment in Owners legal action against Ms. Berlin, when it knew or should have known that its position was unreasonable and was intended to deprive Mr. and Mrs. Palmer of UIM benefits improperly, or at very least Owners recklessly disregarded the fact that their conduct was unreasonable;

l.  Failing to properly consider Mr. Palmer's treating health care providers' opinions on his injuries caused by the collision and relying exclusively on its retained professional litigation doctors with known histories of being defense expert and routinely disagreeing with treating health care providers on issues of causation of injuries;

m.  Failing to conduct a proper investigation through meetings with and/or the taking of statements under oath of Mr. and Mrs. Palmer, meetings with Mr. Palmer's treating physicians or requests to these physicians for further information, and a meeting with Mr. Palmer's employment supervisor;

n.  Any other conduct discovered during the course of this litigation or in the course of Owners litigation against Ms. Berlin.

76.     Owners' aforesaid conduct was unreasonable and Owners either knew such conduct was unreasonable or recklessly disregarded the fact that the conduct was unreasonable.

77.     As a direct and proximate result of Owners' breach of its duty of good faith and fair dealing, Mr. and Mrs. Palmer have sustained damages in the amount to be proved at the time of trial.

10

## PLAINTIFFS' THIRD CLAIM FOR RELIEF
### (VIOLATION OF C.R.S. § 10-3-1115(1)(A) AND C.R.S. § 10-3-1116(1))

78. Plaintiffs incorporate all previous allegations as if more fully set forth herein.

79. Owners' denial of Mr. and Mrs. Palmer's claims for underinsured motorist benefits is unreasonable.

80. Owners' delay in the handling of Mr. and Mrs. Palmer's claims for underinsured motorist benefits is unreasonable.

81. Pursuant to C.R.S. § 10-3-1116(1), Mr. and Mrs. Palmer are entitled to reasonable attorney's fees, the UIM benefits owed plus two times the covered benefit for Owners' unreasonable delay and denial of their UIM benefits.

WHEREFORE, the Plaintiffs David and Leanna Palmer pray for judgment against the Defendant Owners Insurance Company on all claims and damages allowed by law in the amount to be proved at the time of trial, including but not limited to, the UIM benefits owed plus two times the benefits denied or delayed, pre and post judgment interest, costs, expert witness fees, reasonable attorney's fees, and such other damages allowed for bad faith breach of an insurance contract and for such further relief allowed on the Plaintiffs' claims which are just and proper.

### PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES.

Respectfully submitted this 7th day of June, 2018.

RAMOS LAW
*Original signatures on file at Ramos Law*
/s/ Brian Hugen
Brian Hugen, Esq. #40688
*Attorneys for Plaintiffs*

Plaintiffs' Address
5149 LeDuc Lane
Castle Rock, CO 80108

11